COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

DARYL WAYNE PEAKE

MEMORANDUM OPINION[*]

v.     Record No. 0262-15-3                    PER CURIAM
                                              OCTOBER 6, 2015

BRANDY ENGLISH BROWN PEAKE

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
Sage B. Johnson, Judge

(Timothy W. McAfee; The McAfee Law Firm, on briefs), for
appellant.

(Timothy W. Hudson, on brief), for appellee.

Daryl Wayne Peake (husband) appeals a final decree of divorce. Husband argues that the

trial court erred in (1) its equitable distribution award; (2) awarding Brandy English Brown Peake

(wife) spousal support in the amount of $9,000 per month for a period of fifteen years;

(3) considering an appraisal performed by wife's expert because the value was not determined

according to the date in the scheduling order; (4) failing to consider husband's current income in

awarding spousal support to wife; (5) failing to consider husband's current income in determining

the amount of child support; (6) requiring husband to pay wife's credit card debt; (7) awarding wife

attorney's fees in the amount of $30,000; and (8) awarding wife spousal support for an additional

fifteen years, after having paid support for four previous years, because it was "a violation of the

13th Amendment." Upon reviewing the record and briefs of the parties, we conclude that this

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted).

Husband and wife met when they were students in college. The parties married on July 28, 2001, and in August 2001, moved to Grenada for husband to attend medical school. Husband obtained student loans for tuition, books, and living expenses, and wife worked part-time. After two years in Grenada, the parties moved to St. Vincent for husband's education. In August 2003, the parties moved to New York for husband's education. In February 2005, the parties moved to Tennessee while husband completed his clinicals in Knoxville and Madisonville, Tennessee. The parties lived with wife's parents. Husband graduated from medical school in May 2005. Husband's student loan debt was approximately $250,000.

From July 2005 to June 2009, the parties lived in Jackson, Mississippi while husband completed his residency training in anesthesiology. Wife worked until she stayed home with their children, who were born in 2007, 2009, and 2010.

In June 2009, husband graduated from his residency program in Mississippi and obtained employment in Abingdon, Virginia. According to his employment contract, he earned $300,000 per year, plus benefits. In 2010, his base salary increased to $325,000. He also supplemented his salary with *locem tenens* jobs until 2011 when his employer changed its policy.

In August 2009, the parties purchased a home for $770,000. They financed the entire purchase price. The parties' total debt was approximately $1.1 million.

Beginning in 2009 and continuing in 2010, the parties' marriage deteriorated. In November 2010, wife confronted husband with allegations that he was having an affair. The parties separated on December 1, 2010. Wife and the children moved to Tennessee.

In December 2010, wife filed a complaint for divorce. Husband filed an answer and cross-bill, and wife filed an answer to the counterclaim. The trial court entered a *pendente lite* order on February 8, 2011. The parties agreed to custody and visitation, as well as support. Husband agreed to pay wife $5,500 per month in unitary support. In addition, husband agreed to pay the mortgage payments and expenses associated with the former marital residence, car payments and expenses, and school loan payments.

The parties submitted their evidence by deposition and filed briefs with the court. On October 17, 2014, the trial court issued its letter opinion. The trial court reviewed the equitable distribution factors in Code § 20-107.3(E). It noted that the parties agreed that husband would keep the former marital residence and be responsible "for all debts incurred during the marriage." The parties also agreed to retain the personal property in their possession. The trial court awarded wife one-half of the marital value of husband's IRA. The trial court also reviewed the spousal support factors in Code § 20-107.1(E). It found that wife earned $15.63 per hour for twenty-eight hours per week as a part-time art teacher and husband earned an average annual salary of $370,567. The trial court awarded wife $9,000 per month in spousal support for fifteen years. It calculated child support pursuant to the guidelines.

On December 5, 2014, husband asked the trial court to reconsider its spousal support and child support awards. The trial court denied the motion.

On January 28, 2015, the trial court entered the final decree of divorce, which included an award of attorney's fees to wife. This appeal followed.

ANALYSIS

*I. Equitable distribution - Assignment of error 1*

Husband argues that the trial court erred in its equitable distribution award. Husband asserts that the equitable distribution award was "so disparate that it evidences a lack of appropriate consideration of the statutory factors." He also contends the trial court failed to consider the reduction in debt that husband paid from his separate property after the date of separation. In addition, he argues that the trial court failed to consider the tax consequences to husband by requiring him to make a lump sum payment to wife for her share of the IRA. He also contends the trial court misunderstood husband's equitable distribution proposal.

On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

"'Virginia law does not establish a presumption of equal distribution of marital assets.'" Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (quoting Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998)); see also Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986).

"So long as the court considers each factor [in Code § 20-107.3(E)] and the evidence supports the conclusions reached by the trial court, we will not disturb the award on appeal merely because it is unequal." Artis v. Artis, 10 Va. App. 356, 362, 392 S.E.2d 504, 508 (1990).

In his brief to the court that was filed on June 19, 2014, husband proposed a division of the marital property such that he received the IRA, the former marital residence, and the personal property in his possession, while wife received the personal property in her possession, including the 2008 Chevy Tahoe. Husband expressed a "willingness to absorb . . . all secured and

unsecured marital debt, PROVIDED that his spousal support obligations are appropriately adjusted."

Husband again stated his position on equitable distribution in "Defendant's Brief in Response to Plaintiff's Brief," which was filed on June 19, 2014. Husband explained,

> In exchange for [wife's] release of ownership interests in the personal property currently in his possession, and the former marital residence, Daryl is willing to be solely responsible for the satisfaction of all marital debt. He is also willing to agree to an equitable distribution award wherein Brandy has sole ownership of the Tahoe and her personal property.

As stated in his previous brief, he did not agree to a division of the IRA.

Meanwhile, wife requested that she be awarded the personal property in her possession, including the Chevy Tahoe, and she requested half the value of the Tomberlin LSV, husband's IRA, the money remaining in the parties' joint bank account, and reimbursement for husband's use of her credit card after separation.[1] She also asked the trial court to order husband to be responsible for his student loan debt and the Tahoe's lien. She agreed to husband being awarded the former marital residence and the personal property in his possession.

The trial court's letter opinion discussed, in detail, each of the factors in Code § 20-107.3(E). Contrary to husband's arguments, the trial court acknowledged that husband "has spent over $200,000 . . . since separation to pay down marital debt." The trial court took this fact into consideration when it denied wife's request for half of the balance of the joint bank account at the time of separation.

Based on the parties' briefs and proposed distributions, the trial court found that the parties agreed that husband would receive the former marital residence and the personal property

---

[1] Wife's brief to the trial court was not included in the appendix. Rule 5A:25. However, the trial court discussed wife's requests in its letter opinion, which was included in the appendix.

in his possession and be responsible for the marital debt, while wife would receive the personal property in her possession.[2] The trial court found that there was a "disparity" in this distribution, as wife's award was worth $61,197.67 and husband's award was negative $365,827.41.[3] The trial court noted that the distribution "appears advantageous" to wife; however, it found that "the bulk of the debt allocated to [husband] comes attached to valuable real property."

The parties disagreed about the distribution of the IRA, but the trial court awarded half of the IRA's value, or $16,233.41, to wife. Husband contends the trial court did not consider the tax consequences of this award if he had to withdraw funds to pay wife for her share. However, wife stated in her brief that the "trial court did not require the husband to cash out the IRA to pay the wife one-half of the *value* of the IRA, but to divide the IRA itself by court order. Dividing the IRA in this manner is not a taxable event." In light of wife's statements, it appears that this is a moot point. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (holding that "mootness has two aspects: 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome'" (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969))).

Therefore, considering the record in the light most favorable to wife, since she was the prevailing party, the evidence supports the trial court's equitable distribution award.

---

[2] Husband argues that he did not agree to this distribution, but the trial court found that he did agree to this distribution. Considering the statements in his briefs filed with the trial court as noted above, the trial court did not err in making this finding. "[A] trial judge's factual finding will 'not be set aside unless plainly wrong or without evidence to support it.'" Hughes v. Hughes, 33 Va. App. 141, 146, 531 S.E.2d 645, 647 (2000) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

[3] This figure was based on the value of the former marital residence as determined by husband's expert.

*A. Assignment of error 2*

Husband argues that the trial court erred in awarding spousal support to wife in the amount of $9,000 per month for fifteen years.[4] Husband contends his spousal support obligation, along with the obligations imposed by the equitable distribution award, exceed his monthly disposable income. He also asserts that the trial court awarded spousal support in an amount that exceeds wife's needs. He further argues that the fifteen-year duration is unreasonable.

"'In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Accordingly, our review is limited to determining whether the trial court clearly abused its discretion.'" West v. West, 53 Va. App. 125, 130-31, 669 S.E.2d 390, 393 (2008) (quoting Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005)). This broad discretion extends to the "'nature, amount and duration' of the award." Robinson v. Robinson, 54 Va. App. 87, 91, 675 S.E.2d 873, 875 (2009) (quoting Code § 20-107.1(E) (listing thirteen factors for consideration)).

"The purpose of spousal support 'is to provide a sum for such period of time as needed to maintain the spouse in the manner to which the spouse was accustomed during the marriage, balanced against the other spouse's ability to pay.'" Miller, 44 Va. App. at 684, 607 S.E.2d at

---

[4] Husband argues that since the trial court erred in its equitable distribution award, the spousal support matter should be remanded to the trial court. See Robinson v. Robinson, 46 Va. App. 652, 671, 621 S.E.2d 147, 156 (2005) (*en banc*) ("[W]here an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from the additional proceedings.'" (quoting McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985))). Since this Court affirms the trial court's equitable distribution award and spousal support award, the matter will not be remanded.

131 (quoting Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990)).

In awarding spousal support, a trial court must consider the factors in Code § 20-107.1(E); however, "[t]his does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. It does mean, however, that the court's findings must have some foundation based on the evidence presented." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

In the present case, the trial court made numerous findings of fact relative to the various Code § 20-107.1(E) factors. Those findings are supported by the evidence, as viewed in the light most favorable to wife, and, in turn, support the trial court's spousal support award. Specifically, the trial court noted that of the nine years that the parties were married, husband spent eight years "pursuing what would eventually become a lucrative career as an anesthesiologist." During that time, the parties moved from Grenada to St. Vincent, New York, Tennessee, Mississippi, and Abingdon. They incurred "enormous debt." The trial court found that wife "could not leverage her Bachelor of Arts in Graphic Design to find related employment while [husband] worked toward his medical degree, and so took part-time work to provide support." The trial court also held that husband's "skills, education and training as an anesthesiologist has endowed him with a formidable earning capacity," while wife worked as a part-time art teacher earning $15.63 per hour for twenty-eight hours per week. The trial court noted that "further education enabling a gainful career path for [wife] is likely to be expensive and time-consuming."

Contrary to husband's arguments, "Code § 20-107.1(E) authorizes the trial court to enter an award of spousal support in an amount greater than – or otherwise results in the dependant spouse receiving income in an amount greater than – the economic marital standard of living." Robinson, 54 Va. App. at 97, 675 S.E.2d at 878 (citing Miller, 44 Va. App. at 686 n.5, 607 S.E.2d at 132 n.5). The trial court considered that the parties had a lifestyle of "austerity" while

husband was in medical school, but once he was employed, the parties' standard of living improved. The trial court did not err in holding that wife was entitled to a "comfortable" lifestyle.

Husband argues that the trial court abused its discretion in awarding wife $9,000 per month for fifteen years. Wife requested an award of $10,000 per month, but the trial court found that this amount was "excessive" based on wife's needs and husband's obligations. Instead, it awarded her $9,000 per month based on her expenses and the obligations that husband agreed to pay. The trial court further held that the spousal support award would be for a defined duration of fifteen years. "The court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration . . . ." Code § 20-107.1(C). In deciding to award spousal support for a defined duration, the trial court considered the length of the marriage, wife's "ability to transition to more permanent and financially secure employment," wife's age, and the children's ages. When viewed in the light most favorable to wife, this Court cannot say that the trial court abused its discretion in determining the nature, amount or duration of spousal support or that the award is without evidence to support it.

### B. Assignment of error 4

Husband argues that the trial court failed to use his current income when calculating his spousal support obligation. The trial court determined that based on his last three tax returns, husband's annual income was $370,566.67. Husband asserts that the trial court should have considered his January 2013 net monthly income of $17,500, which is the equivalent of $210,000 per year. He contends this was a more realistic figure for his income.

"[T]he court, in setting support awards, must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679 (quoting Young v.

- 9 -

Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)).

Husband's income fluctuated in the last several years. The trial court considered his earning capacity and recent earnings to calculate his income for spousal support purposes. Contrary to husband's arguments, the trial court did not err in averaging his past three years of gross income to determine his income for spousal support purposes.

## C. Assignment of error 5

For the first time on appeal, husband argues that the trial court failed to use his current income when calculating his child support obligation. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."). "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (*en banc*). Since husband did not raise this argument below, we will not consider his fifth assignment of error.

## D. Assignment of error 8

Husband argues that the trial court's award of spousal support for fifteen years, in addition to the four years he paid temporary support, is a violation of the Thirteenth Amendment.

The Thirteenth Amendment abolished slavery and involuntary servitude. U.S. Const. amend. XIII. Husband's spousal support obligation did not amount to involuntary servitude. As discussed above, the trial court did not err in awarding spousal support to wife in the amount of $9,000 per month for fifteen years.

*III. Rule 5A:20(e) – Assignments of error 3 and 6*

In his third assignment of error, husband states, "The Trial Court erred in considering an appraisal performed by [wife's] expert that provided an opinion on the value of the marital residence on a date other than the date established in the Scheduling Order." The trial court previously found that husband's appraisal was more accurate for equitable distribution purposes. However, while reviewing the factors for spousal support, the trial court stated,

> The parties also agreed [husband] would accept all marital debt in exchange for retaining the marital home. Because of this, the values outlined in equitable distribution show a facial disparity in favor of [wife]. This disparity is largely due to the marital home retaining negative equity at the time of separation. This equity has more than recouped since that valuation.

In his opening brief, husband asserts that "by use of the second report in calculation of a spousal support award, the Court exceeded its scope of authority in deviating from the findings of the equitable distribution award in consideration of the relevant and stated statutory factor associated with an award of Spousal Support."

In his sixth assignment of error, husband argues, "The Trial Court erred in requiring [him] to pay the alleged credit card debt of [wife]." Husband contends he paid $2,500 toward wife's credit card debt in December 2010, and she "produced no credit card statements that showed the balance of $2,484, or payments, if any, on the account."

Rule 5A:20(e) mandates that appellant's opening brief includes "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Husband did not comply with Rule 5A:20(e) because his opening brief does not contain any principles of law or citation to legal authorities to fully develop his arguments with respect to his third and sixth assignments of error.

Husband has the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). We find that husband's failure to comply with Rule 5A:20(e) is significant, so we will not consider the third and sixth assignments of error. See Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention."); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008).

## IV.  Attorney's fees – Assignment of error 7

Husband argues that the trial court erred in awarding $30,000 to wife for her attorney's fees and costs. The final decree states that wife's "motion for attorney's fees is granted primarily due to the disparity of the parties' income, but granted only in part because the court considered in establishing spousal support [wife's] exhibit in which she budgeted installment payments of $1000 per month for attorney's fees due."

"'[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'" Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

The appendix includes a copy of the attorney fee affidavit from husband's counsel, but husband failed to include in the appendix a copy of wife's motion for attorney's fees or her counsel's affidavit.

> The appendix must include "any testimony and other incidents of the case germane to the questions presented," Rule 5A:25(c)(3), and "exhibits necessary for an understanding of the case that can reasonably be reproduced," Rule 5A:25(c)(6). "The appendix is a tool vital to the function of the appellate process in Virginia. . . . By requiring the inclusion of all parts of the record germane to the issues, the Rules promote the cause of plenary justice." Thrasher v. Burlage, 219 Va. 1007, 1009-10, 254 S.E.2d 64, 66 (1979) (per curiam). Thus, the filing of an appendix that complies with the Rules, is "essential to an informed collegiate decision." Id.

Patterson v. City of Richmond, 39 Va. App. 706, 717, 576 S.E.2d 759, 764-65 (2003).

This Court "will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Buchanan, 14 Va. App. at 56, 415 S.E.2d at 239. Nor is it this Court's "function to comb through the record . . . in order to ferret-out for ourselves the validity of [appellant's] claims." Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (*en banc*).

Without wife's motion and counsel's affidavit in the appendix, this Court is unable to determine whether the $30,000 award of attorney's fees was reasonable. Because the appendix filed in this case does not contain a part of the record that is essential to the resolution of the issues before us, we cannot consider husband's seventh assignment of error.

*V. Appellate attorney's fees*

Wife seeks an award of the attorney's fees and costs she incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). We deny her request for an award of attorney's fees and costs she incurred on appeal.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.